HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WHITE OAK PARTNERS II, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HERITAGE FINANCIAL CORPORATION, HERITAGE BANK, INC. as successor to N.W. COMMERCIAL BANK, JEFF GOODELL and LEAD GOODELL and the marital community composed thereof, and DOES 1-10<br><br>Defendants. | CASE NO. C14-5911 RBL<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>DKT. #14 |

THIS MATTER comes before the Court on Defendants Heritage Financial Corporation and Heritage Bank's Motion of Summary Judgment [Dkt. #14]. In the fall of 2010, Jeff Goodell (a Northwest Commercial Bank[1] loan officer) and Emiel Kandi (Plaintiff White Oak's "agent") began discussing securing a loan for White Oak. Heritage fired Goodell that December after learning he had stolen over $1 million from the Tacoma Rescue Mission and siphoned it to friends and family, including Kandi's affiliates. Goodell was convicted of bank fraud and is in

---

[1] Heritage subsequently acquired Northwest Commercial Bank.

1 | prison. Similarly, Kandi pleaded guilty to conspiracy and to making false statements on other
2 | loan applications. *See* Case No. CR13-5369-RBL, U.S. District Court, Western District of
3 | Washington, Dkt. #51.)

4 | During Heritage's investigation into Goodell's theft, it discovered correspondence
5 | between Goodell and Kandi. It claims Goodell had faked a few loan forms for an $8.716 million
6 | line of credit for White Oak, seven times Heritage's lending limit, to be secured by "four barrels
7 | of uncut emeralds worth $47 million." These forms were neither complete nor signed. Ironically,
8 | one of the forms Goodell sent White Oak specifically notified it that oral agreements to loan
9 | money or to extend credit are "not enforceable" under Washington law. In December 2010,
10 | Heritage refused to fund the loan based on incomplete paperwork that it determined was forged.

11 | Almost four years later, White Oak sued in Pierce County Superior Court, claiming that it
12 | was damaged by Heritage's refusal to fund its loan. It alleges breach of contract, promissory
13 | estoppel, tortious interference with business relationship/opportunity, and violations of the
14 | Washington Consumer Protection Act (CPA) and the Truth in Lending Act (TILA). This case
15 | was removed to this Court in November 2014 [Dkt. #1].

16 | Heritage seeks summary judgment. It argues the limitations period bars White Oaks'
17 | claims for breach of contract, tortious interference, and violation of TILA. It also argues that the
18 | statute of frauds bars White Oak's claim for breach of a loan agreement and promissory estoppel,
19 | that White Oak cannot support all of the elements for a CPA claim, and that TILA is inapplicable
20 | to consumer loans.

21 | **I.     DISCUSSION**

22 | Summary judgment is proper "if the pleadings, the discovery and disclosure materials on
23 | file, and any affidavits show that there is no genuine issue as to any material fact and that the
24 |

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50, 106 S. Ct. 2505 (1986); *see also Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *See Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. The moving party bears the initial burden of showing no evidence exists that supports an element essential to the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). Once the movant has met this burden, the nonmoving party then must show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24.

**1.      Breach of Contract Claim.**

White Oak claims that Heritage breached a binding loan contract by failing to fund its loan after it had acquired barrels of emeralds in reliance on the loan commitment. Heritage argues that White Oak's claim is both untimely and, because it is not in writing, is unenforceable as a matter of law.

Under Washington law, oral agreements to loan money are not enforceable: "A credit agreement is not enforceable against a creditor unless the agreement is in writing and signed by the creditor." *See* RCW 19.36.110.

Neither Goodell's alleged oral promise that Heritage would loan White Oak money, nor the unsigned and incomplete loan documents, created an enforceable contract. The breach of contract claim is fatally flawed. Heritage's motion on this claim is GRANTED, and it is DISMISSED with prejudice.

Even if an oral promise could create a loan contract, the limitations period for such a claim is three years. *See* RCW 4.16.080(3). White Oak's breach of contract claim is DISMISSED with prejudice on this basis as well.

**2.    Promissory Estoppel Claim.**

White Oak also asserts a promissory estoppel claim, arguing that it "relied on the agreement of the parties to [its] substantial detriment" and that it "reasonably relied on the promises of defendants to [its] great damage." [Dkt. #1, Exhibit #1, p. 6].[2] Heritage seeks summary judgment on this claim because it too cannot overcome the statute of frauds problem discussed above.

To make a claim for promissory estoppel, a plaintiff must show (1) a promise that (2) the promisor should have reasonably expected to cause the promisee to change his position and (3) that did cause the promisee to change his position (4) in justifiable reliance on the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise. *See Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 259 n.2, 616 P.2d 644 (1980) (citing *Corbit v. J.I. Case Co.*, 70 Wn.2d 522, 539, 424 P.2d 290 (1967)).

---

[2] White Oak alleges detrimental reliance and promissory estoppel as two separate causes of action in its complaint. Because detrimental reliance is an element of promissory estoppel, the Court treats these claims together. *See* Restatement (Second) of Contracts § 90 (1981); *see also Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 259 n.2, 616 P.2d 644 (1980).

1    Washington courts have repeatedly refused to recognize promissory estoppel claims that
2  do not satisfy the statute of frauds. *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see*
3  *also Greaves v. Med. Imaging Sys., Inc.*, 124 Wn.2d 389, 399-01, 870 P.2d 276 (1994) (refusing
4  to adopt Restatement (Second) of Contracts § 139 (1981), which makes promissory estoppel
5  actions enforceable notwithstanding the statute of frauds). White Oak did not rely on a signed
6  writing. Without justifiable reliance, this claim is similarly flawed as a matter of law.

7    Heritage's motion on White Oak's promissory estoppel claim is GRANTED, and it is
8  DISMISSED with prejudice.

9  **3.    Tortious Interference with a Business Relationship/Opportunity Claims.**

10    White Oak argues Heritage's refusal to fund its line of credit ruined its relationship with
11  the previous owner of the emerald gemstones, "a lucrative business acquaintance" with whom it
12  had expected to conduct business in the future. Heritage responds that it did not know of or
13  interfere with White Oak's business dealings, and that it could not have, because it did not even
14  know of the loan documents until it investigated Goodell. It also argues that White Oak's claims
15  are time-barred.

16    To establish a claim for tortious interference, a plaintiff must show: (1) a valid contract or
17  business expectancy (2) that the defendant had knowledge of (3) and intentionally interfered with
18  causing a breach or termination (4) by an improper means and (5) resultant damages. *See Kane v.*
19  *City of Bainbridge Island*, 866 F.Supp.2d 1254, 1265 (W.D. Wash. 2011) (citing *Commodore v.*
20  *Univ. Mech. Contractors, Inc.*, 120 Wn.2d 120, 839 P.2d 314, 322 (1992)).

21    The limitations period for the tort of intentional interference with business expectancy is
22  three years. *See City of Seattle v. Blume*, 134 Wn.2d 243, 251, 947 P.2d 223 (1997); *see also*
23
24

RCW 4.16.080(2).[3] Nearly four years had passed between when Heritage refused to fund White Oak's loan and the commencement of this action. This claim is time-barred as a matter of law.

Heritage's motion on White Oak's tortious interference claims is GRANTED, and this claim is DISMISSED with prejudice.

**4.     Washington Consumer Protection Act Claim.**

White Oak argues Heritage violated the CPA because Mr. Goodell committed theft, which adversely affected the public. Heritage argues White Oak cannot establish that it engaged in a deceptive practice that impacted the public nor can White Oak demonstrate damages.

To state a claim under the WCPA, a plaintiff must allege (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) and causes injury to the plaintiff's business or property; and (5) that injury is causally linked to the unfair or deceptive act. *See* RCW 19.86 *et seq.*; *see also Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1234 (9th Cir. 2005) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986)).

Heritage did not commit a fraud on the public. The public has no interest in whether or not White Oak receives a nearly $9 million loan secured by emeralds. And even if it did, Goodell provided White Oak with notice that oral agreements are not enforceable in Washington. Heritage did not deceive White Oak by refusing to enforce an unsigned loan agreement. The deception is on the other side of the ledger.

Heritage's motion on White Oak's CPA claim is GRANTED, and that claim is DISMISSED with prejudice.

---

[3] White Oak's argument for the application of the six year limitations period for written contracts is baseless in the absence of a written contract.

**5.     Truth in Lending Act Claim.**

White Oak, without explanation, alleges Heritage violated the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq*. Because TILA only applies to consumer credit transactions, White Oak cannot sustain this cause of action. *See* 15 U.S.C. § 1603. Furthermore, TILA has a one-year statute of limitations, and this claim is time-barred as a matter of law. *See* 15 U.S.C. § 1640(e). Heritage's motion on White Oak's TILA claim is GRANTED, and that claim is DISMISSED with prejudice.

## II.     CONCLUSION

Defendants Motion for Summary Judgment [Dkt. #14] is GRANTED. White Oak's Cross-Motion for Summary Judgment [Dkt. #17] is DENIED. The case against Heritage is DISMISSED.

IT IS SO ORDERED.

Dated this 4th day of November, 2015.

Ronald B. Leighton
United States District Judge